**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PAMELA BOOKER,

    Petitioner,                              CASE NO. 2:07-11684
v.                                           HONORABLE STEPHEN J. MURPHY, III

CLARICE STOVALL,

    Respondent,
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Pamela Booker, ("Petitioner"), presently confined at the Huron Valley Women's Complex in Ypsilanti, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] In her *pro se* application, petitioner challenges her conviction for second-degree murder, M.C.L.A. 750.317. For the reasons stated below, the application for writ of habeas corpus is **DENIED.**

### BACKGROUND

Ms. Booker was convicted of the above charge following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the

---

[1] When Ms. Booker originally filed her petition for writ of habeas corpus, she was incarcerated at the Scott Correctional Facility, but has since been transferred to the Huron Valley Women's Complex. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254. Normally, the Court would order that the caption of the case be amended to reflect that the proper respondent in this case is the warden of Huron Valley Women's Complex, the current location of petitioner. However, because the Court is denying the petition, it will not do so in this case. *See Logan v. Booker,* No. 2007 WL 2225887, * 1, n. 1 (E.D. Mich. August 1, 2007).

1

Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

**I.  FACTS**

Decedent James Lewis, Jr., was killed by a single stab to the heart on November 10, 2004 at approximately 2:00 a.m. The killing was allegedly heard but not seen by defendant's 12-year-old son, Rodney Davis, who testified at trial. The prosecutor was permitted to introduce a statement that Rodney had allegedly made to one of defendant's acquaintances approximately 18 hours after the killing. Defendant's sole claim on appeal is that the trial court erred when it allowed the admission of this earlier statement.

According to Rodney's testimony, he had known Lewis for a couple of years, and Lewis had been living in defendant's home for a couple of months, sleeping on the couch. Defendant's household also included Rodney, Rodney's sister, Sharmella, and Sharmella's friend, Erika Grady. Rodney testified that on the night Lewis was killed, he had gone to sleep around midnight, but had awakened around one o'clock in the morning. He stayed in his room playing a video game until around two o'clock, at which time Rodney heard his mother and sister talking in the hallway.[2] Rodney went into the hallway and saw the victim lying on the floor with blood on him. Rodney testified that his mother, defendant, told him that she had heard a "boom" at the door, and that when she opened the door she found the victim lying there, and that defendant was crying.

Rodney testified that he called D'Juan Lilly, a family friend, who had formerly lived in the apartment above defendant's apartment. Rodney asked Lilly if he could spend the weekend at Lilly's home, and Lilly came to defendant's apartment to pick Rodney up. Rodney testified that he and Lilly went for a walk, and Lilly questioned him repeatedly about the killing. Rodney stated that the repetitive questions made him nervous, so he told Lewis that his mother had killed the victim. Lilly then called defendant.

Rodney testified that Lilly's brother, who is a police officer, later came to Lilly's home and took him to the police station to make a statement. In his statement to the police Rodney said that he heard his mother and the victim arguing, that he heard someone pull a knife from a jar in the kitchen, that he

---

[2] Specifically, this was the hallway outside of defendant's apartment, in a building that included four single-family flats. (footnote original).

2

heard the victim ask defendant if she was going to stab him, and that he heard the victim scream. During the trial, Rodney did not have his glasses with him, so the court permitted the prosecutor to read some portions of Rodney's prior statement aloud, without objection by defense counsel. Defendant's son admitted that he had made this statement, and that he was telling the truth when he did so.

Lilly also testified, and it is Lilly's testimony about a statement made to him by Rodney that is challenged now on appeal. The statement was made approximately 18 hours after the killing. Lilly testified that at approximately 8:30 p.m. or 9:00 p.m. on November 10, 2004, defendant called him and asked whether her son could stay for the weekend. He agreed. She also told him that the victim had been killed. Defendant sounded nervous and was stuttering. She provided inconsistent stories of how the killing had occurred. Lilly stated that after he picked Rodney up and took him to his home, the two walked to a nearby store. During the walk, Rodney burst into tears and told Lilly that defendant had killed the victim. Rodney told Lilly that he did not want to return home, and asked to live with Lilly.

Lilly testified that, after defendant's son gave him this information, he called his brother, who is a police officer. While they waited for Lilly's brother to arrive, defendant called. During the conversation, Lilly asked defendant whether there was anything she needed to tell him. She did not reply and he asked her again, more aggressively. Lilly testified that defendant then admitted that she had killed the victim.

Other evidence was presented that substantiates this testimony. The prosecutor presented oral and written statements made by defendant in which she implicated herself in the killing. The prosecutor also presented a letter written by defendant to her boyfriend. In the letter, defendant asked her boyfriend to "talk to [her son]" and "tell him he needs to say the right things" and recant his earlier statement to the police. She wanted her son to say that he was asleep and did not hear anything, and that he had lied so that she would not put him in a juvenile home for getting kicked out of school. She further explained how her son should act during questioning so that it "don't make his self (sic) look like somebody told him what to say." The letter also described defendant's version of the events. Defendant testified and confirmed that she wrote the letter, but maintained that she was only trying to get her son to tell the truth.

*People v. Booker,* No. 262286, * 1-2 (Mich.Ct.App. September 28, 2006).

Ms. Booker's conviction was affirmed on appeal. *Id., lv. den.* 477 Mich. 1005 (2007).

Ms. Booker seeks a writ of habeas corpus on the following ground:

3

Did the trial court abuse its discretion when it found Rodney Davis' statement an excited utterance?

## II. STANDARD OF REVIEW.

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. DISCUSSION

Petitioner contends that the trial court abused its discretion when it allowed the introduction of her son's out-of-court statement to Lilly to be admitted pursuant to the excited utterance exception to the hearsay rule.

4

The Michigan Court of Appeals agreed that the statement did not qualify as an excited utterance, *Booker,* Slip. Op. at * 4, but found that admitting the statement was harmless error:

> Here, the critical elements of the statement to Lilly were fully corroborated by Rodney's trial testimony. He testified that he heard defendant stab the victim. In addition, his statement to the police, admitted without objection, contains more damaging information than that contained in the challenged statement. Lilly testified that defendant admitted killing decedent when she spoke to him on the phone. Defendant's letter further corroborates her involvement in the killing. Defendant essentially challenges the introduction of the least damaging evidence of her guilt. Therefore, we find no reasonable probability that, but for the admission of the admission of the challenged statement, the result of the proceeding would have been different.

*Id.*

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000). What is or is not hearsay evidence in a state court trial is governed by state law. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 705 (E.D. Mich. 2004)(internal citations omitted). Ms. Booker's claim that the trial court improperly admitted her son Rodney Davis' statement to Lilly under the excited utterance exception to the hearsay rule presents a state evidentiary law issue which is not cognizable on federal habeas review. *See e.g. Smith v. Jones,* 326 Fed. Appx. 324, 330 (6th Cir. 2009); *cert. den.* 130 S. Ct. 1502 (2010); *See also Weber v. Newland,* 16 Fed. Appx. 692, 693 (9th Cir. 2001); *Williams*

5

*v. White,* 183 F. Supp. 2d 969, 975-77 (E.D. Mich. 2002).

Nor can Ms. Booker claim that the admission of her son's out-of-court statement to Lilly violated her Sixth Amendment right to confrontation, because her son testified at trial and was subjected to cross-examination. An inquiry into the reliability of a hearsay statement is not required for Confrontation Clause purposes when the hearsay declarant is present at trial and subject to unrestricted cross-examination. *See United States v. Owens,* 484 U.S. 554, 560 (1988). In this situation, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Id.* at 560 (internal citations omitted). Because Rodney Davis testified at Ms. Booker's trial and was subject to cross-examination, the admission of his hearsay statement to Lilly as an excited utterance did not violate Ms. Booker's Sixth Amendment right to confrontation. *See Shannon v. Berghuis,* 617 F. Supp. 2d 596, 604 (W.D. Mich. 2008).

Finally, assuming that the admission of Rodney Davis' hearsay statement to Lilly violated the federal constitution, any error was harmless. The standard for showing harmless error on collateral review is "considerably less favorable" to a habeas petitioner than the standard which is applied on direct review. On direct review, before a federal constitutional error can be held harmless, the court must be able to declare that the error was harmless beyond a reasonable doubt. The harmless error test for collateral review is different. A federal court can grant habeas relief only if the trial error had a substantial and injurious effect or influence upon the jury's verdict. *Ford v. Curtis,* 277 F. 3d 806, 809 (6th Cir. 2002) (*quoting Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)). Under this standard, a habeas petitioner is not entitled to habeas relief unless he or she can establish

that the trial error resulted in "actual prejudice." *Id.* Thus, a federal habeas court can grant habeas relief only if a habeas petitioner carries the burden of showing that a Confrontation Clause error had a substantial and injurious effect or influence on the jury's verdict. *See Bulls v. Jones,* 274 F. 3d 329, 335 (6th Cir. 2001).

In light of the fact that Ms. Booker admitted to killing the victim when she spoke to Lilly on the telephone, the admission of Lilly's testimony concerning Davis' out-of-court statement was harmless error at best. *See Denny v. Gudmanson,* 252 F. 3d 896, 904-05 (7th Cir. 2001); *See also Tucker v. Warden, Ohio State Penitentiary,* 64 Fed. Appx. 467, 472 (6th Cir. 2003). This Court further concludes that the admission of Rodney Davis' hearsay statement under the excited utterance was harmless error because it was cumulative of Davis' own testimony at Ms. Booker's trial. *See Smith,* 326 Fed. Appx. at 330. Ms. Booker is not entitled to habeas relief on her claim.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a decision of this Court, the Court must determine if petitioner is entitled to a Certificate of Appealability (COA). 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R.App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to

proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)).

In applying the above standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003). "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Id.* at 323.

After conducting the required inquiry, and for the reasons stated in the order above, the Court finds that Ms. Booker has not made a substantial showing of the denial of a constitutional right with respect to her claim. *See* 28 U.S.C. § 2253(c)(2). Petitioner should not receive any encouragement to proceed further. *Slack*, 529 U.S. at 484. Because the Court can discern no good faith basis for an appeal, *see Miller-El*, 537 U.S. at 338, any appeal would be frivolous. The Court will therefore deny a certificate of appealability. *See Long v. Stovall,* 450 F. Supp. 2d 746, 755 (E.D. Mich. 2006).

## CONCLUSION

**IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus [docket entry 1] is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 9, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 9, 2010, by electronic and/or ordinary mail.

                                  s/Alissa Greer
                                  Case Manager